IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LG ELECTRONICS, INC.,

    Plaintiff,

  v.

Q-LITY COMPUTER INC., QUANTA COMPUTER INC., and QUANTA COMPUTER USA INC.,

    Defendants.
                                    /

No. C 01-2187 CW

TENTATIVE RULING REINSTATING JUDGMENT

Defendants Q-Lity Computer Inc., Quanta Computer Inc. and Quanta Computer USA Inc. have filed a motion for summary judgment. Plaintiff LG Electronics (LGE) opposes the motion. The motion was heard on August 21, 2008. Having considered all of the parties papers and argument on the motion, the Court denies the motion as moot and reinstates the judgment for Defendants

BACKGROUND

As described in the Court's earlier orders, Plaintiff has sued Defendants alleging infringement of three patents owned by Plaintiff: United States Patents Numbers 4,939,641 ('641 patent), 5,077,733 ('733 patent) and 5,379,379 ('379 patent).[1] The '641 and '379 patents relate to computer memory access and management. In particular, the '641 patent involves a structure for maintaining

---

[1] The original complaint named several other defendants and two other patents that are no longer at issue in this case.

consistency between a high speed "cache" memory that is subject to continuous updating and a computer's main memory; and the '379 patent presents a technique for transmitting simultaneous read and write requests in a manner that prevents the "reading" of data from main memory when that data is the subject of a pending write request.  The '733 patent discloses a system that permits multiple computer devices alternating access to a system bus.  This patent addresses a problem caused by the constant transmission of data by a frequently used system component.  So long as the frequently used component is transmitting data, it can prevent other system components from carrying out necessary functions that require the transmission of data.  The '733 patent addresses this problem through a rotating priority scheme wherein a component with access to the system bus must relinquish access to a waiting component when predetermined criteria are satisfied.

On August 20, 2002, the Court entered an order construing the disputed terms and phrases used in the patents in suit and a separate order granting Defendants' motion for partial summary judgment and denying Plaintiff's cross-motion for partial summary judgment.[2]  In that motion, Defendants argued that Plaintiff's

---

[2] Although the August 20, 2002 order on the parties' cross-motions for summary judgment found that the patent exhaustion doctrine did not apply to method claims, it did not distinguish between the method and device claims in Plaintiff's patents.  In a later order, the Court clarified its prior order and granted summary judgment in favor of Defendants on their claim that the patent exhaustion doctrine precluded them from being liable for infringement of Plaintiff's device patents and granted summary adjudication in favor of Plaintiff on its claim that neither the patent exhaustion doctrine nor the implied license doctrine precluded it from pursuing its method claims. See Docket No. 359 at 2.

2

patent rights were exhausted by a licensing agreement between Plaintiff and Intel and in the alternative that Plaintiff had, thorough its conduct, granted Defendants an implied license to practice the patent.  Therefore, Defendants argued that Plaintiff's infringement claims failed to the extent they were based on Defendants' integration into their computers of microprocessors and chipsets purchased from Intel.  The Court found that Defendants had established that there were no non-infringing uses for the Intel products.  Therefore, the Court granted Defendants' motion based on the doctrine of exhaustion and denied Plaintiff's cross-motion on the same basis.  Because the Court found that the patent exhaustion doctrine precluded Plaintiff from enforcing its patents against purchasers of Intel's microprocessors and chipsets, it declined to reach the question of whether the implied license doctrine also applies and denied the cross-motions on that defense as moot.  The order stated, "To the extent that Defendants manufacture products using non-Intel microprocessors and chipsets, those products are not at issue in this motion."  Docket No. 209 at 5 n.2.

On November 30, 2004, the Court entered an order addressing, among other things, the parties' cross-motions for summary judgment on Plaintiff's claim that Defendants' Intel-based products infringe the asserted method claims of the '733 patent and '379 patent.  The Court denied Defendants' motion, stating that, while method patents could not be exhausted under then-existing Federal Circuit law, their products did not infringe those patents.  The order again stated, "To the extent that Defendants manufacture products using non-Intel microprocessors and chipsets, those products are not at

3

issue in this Order." Docket No. 846 at 3 n.4. The Court instructed the parties to "meet and confer in an attempt to identify the remaining issues in the case, if any." Id. at 23. The Court noted that Defendants had stated "that they would move to dismiss their invalidity counterclaims if they were found not to infringe LGE's patents." Id. at 3 n.3.

On January 6, 2005, the parties stipulated to entry of final judgment. After summarizing the Court's orders, the stipulation stated, "No causes of action remain to be decided." Docket No. 850. On January 19, 2005, the Court signed the parties' proposed order entering judgment. The order states in relevant part, "Judgment on plaintiff's claims of infringement is entered in favor of defendants. . . . The Clerk of this Court shall enter Final Judgment in these matters in accordance with the provisions of Rule 58 of the Federal Rules of Civil Procedure, and in accordance with the terms of this Order." Docket No. 852. The parties did not cite Federal Rule of Civil Procedure 54(b), which governs partial judgments.

Plaintiff appealed to the Federal Circuit the Court's judgment of noninfringement of its device claims based on the patent exhaustion doctrine and noninfringement of its method claims, either literally or under the doctrine of equivalents. Plaintiff also appealed and Defendants cross-appealed certain claim construction rulings. Finally, Defendants cross-appealed the denial of summary judgment based on their implied license defense.

The Federal Circuit reversed the finding of noninfringement of the device patents under the patent exhaustion doctrine. The

4

Federal Circuit found that the license Plaintiff granted to Intel constituted a sale but noted that the "sale involved a component of the asserted patented invention, not the entire patented system." LG Electronics, Inc. v. Bizcom Electronics, Inc., 453 F.3d 1364, 1370 (Fed. Cir. 2006).  Moreover, the Federal Circuit noted that the license agreement "expressly disclaims granting a license allowing computer system manufacturers to combine Intel's licensed parts with other non-Intel components" and "required Intel to notify its customers of the limited scope of the license, which it did."  Id.  Therefore, the Federal Circuit held that Plaintiff's patent rights with respect to its device claims were not exhausted. The Federal Circuit affirmed the finding that "the sale of a device does not exhaust a patentee's rights in its method claims" and affirmed the Court's finding of no implied license with respect to the method patents.  Id.

In addition, the Federal Circuit held that (1) there were triable questions of fact with respect to infringement of the method claims in the '733 patent; (2) this Court erred in its construction of the relevant device claims of the '641 patent and the '379 patent; and (3) while this Court properly found that the method claims of the '379 patents were not literally infringed, it erred in finding no infringement under the doctrine of equivalents. Accordingly, the Federal Circuit reversed in part the Court's judgment, affirmed it in part and vacated it in part.[3]

---

[3] The Federal Circuit's decision also addressed only those claims related to Defendants' Intel-based products.  See id. at 1368 (describing Defendants as companies that "purchase microprocessors and chipsets from Intel or its authorized

5

Defendants petitioned for certiorari and the Supreme Court granted the petition. Quanta Computer, Inc. v. LG Electronics, 128 S. Ct. 28 (2008). The Supreme Court characterized the Federal Circuit as holding that "the [patent exhaustion] doctrine does not apply to method patents at all and, in the alternative, that it does not apply here because the sales were not authorized by the license agreement." Quanta Computer, Inc. v. LG Electronics, 128 S. Ct. 2109, 2113 (2008). The Supreme Court rejected the "argument that method claims, as a category, are never exhaustible." Id. at 2118. In addition, the Supreme Court held that the Intel products embodied the patents-in-suit. Id. at 2121-2122. Moreover, the Supreme Court held, "The License Agreement [between LGE and Intel] authorized Intel to sell products that practiced the LGE Patents. No conditions limited Intel's authority to sell products substantially embodying the patents." Id. at 2122. The Supreme Court concluded, "Intel's authorized sale to Quanta thus took its products outside the scope of the patent monopoly, and as a result, LGE can no longer assert its patent rights against Quanta." Id. at 2122. Accordingly, the Supreme Court reversed the Federal Circuit's judgment. It did not remand the case to the Federal Circuit or to this Court for any further proceedings

DISCUSSION

I.  Intel-based Products

In accordance with the Court's instructions, Defendants include in their motion for summary judgment their position with

---

distributors and install them in computers").

1 respect to the issues remaining to be decided following the Supreme
2 Court's decision.  Defendants assert that Plaintiff's claims of
3 infringement based on the Intel products have been fully resolved.
4 Plaintiff disputes this contention, arguing that triable questions
5 of fact remain with respect to whether the sales upon which the
6 defense is based took place within the United States.

7 Plaintiff relies on two cases in support of its contention
8 that it is entitled to raise its new argument that Defendants are
9 not entitled to a patent exhaustion doctrine defense with respect
10 to Intel products which were sold outside the United States.  First
11 Plaintiff cites United States v. Cote, 51 F.3d 178 (9th Cir. 1995),
12 a case in which the Ninth Circuit held that a mandate reversing a
13 conviction does not necessarily preclude retrial.  In reaching that
14 decision, the Ninth Circuit noted that, on remand, a lower court
15 "may consider and decide any matters left open by the mandate of
16 [the appellate] court."  Id. at 182.  On this basis, Plaintiff
17 argues that neither the Supreme Court nor the Federal Circuit
18 addressed the factual question of whether there were any foreign
19 sales of products.  However, Cote is clearly distinguishable.
20 There, the conviction was reversed based on an erroneous jury
21 instruction.  As the Ninth Circuit clearly noted, "A reversal of a
22 criminal conviction based on an incorrect jury instruction does not
23 foreclose a second trial."  Id. at 183.

24 Plaintiff also relies on Exxon Chem. Patents, Inc. v. Lubrizol
25 Corp., 137 F.3d 1475 (Fed. Cir. 1998), in which the Federal Circuit
26 reversed a district court's denial of a new trial on remand.  In
27 Exxon, the original trial concluded in a jury finding of literal

7

infringement. Id. at 1477. The district court denied the defendant's motion for judgment as a matter of law and the defendant appealed. Id. On appeal, the Federal Circuit adopted the defendant's proposed claim construction and held that under that claim interpretation, no reasonable jury could have found that the defendant's products literally infringed the plaintiff's patent. Id. The Federal Circuit reversed the jury verdict and advised that the defendant was "'entitled to a judgment of noninfringement as a matter of law.'" Id. at 1478 (quoting order in first appeal). Although the opinion reversing the jury verdict stated that the reversal was "'without remand for a second trial,'" it clearly stated that the opinion "'expressed no view'" on the question of whether the plaintiff "would be entitled to a new trial on infringement under the doctrine of equivalents." Id.

The district court denied a new trial, finding that the Federal Circuit's original opinion left it with "no authority to grant a new trial." Id. The plaintiff appealed that order and the Federal Circuit reversed, holding that "it would be incorrect to conclude that the court's mandate encompassed an issue that was not presented to the court." Id. The Federal Circuit observed that the plaintiff "cannot be charged with having abandoned its doctrine-of-equivalents theory of liability by not submitting it to the jury or raising it on the previous appeal. Once the district judge construed the claim language in [the plaintiff's] favor, the doctrine-of-equivalents issue in the case became moot." Id. at 1478-79.

Plaintiff in this case argues that the Supreme Court's mandate

8

does not encompass the issue of foreign sales.  However, in contrast to the situation in Exxon, the question of whether some products were sold outside the United States and such sales were not protected under the patent exhaustion doctrine could and should have been raised in the original litigation.  However, Plaintiff never raised the issue before this Court.  Indeed, after the Court inquired as to any matters remaining to be decided, Plaintiff stipulated to entry of final judgment based on the Court's orders finding that summary judgment was appropriate on all Intel products based on the patent exhaustion doctrine.[4]  As described above, this stipulation was made pursuant to Federal Rule of Civil Procedure 58, which governs final judgments, not Rule 54(b), which governs partial judgments.

The Court finds that Plaintiff has waived its argument that Intel products sold outside of the United States are not protected under the patent exhaustion doctrine.

II. VIA Products

Both parties contend that, even if the Supreme Court's decision resolved all issues related to Defendants' Intel-based products, Plaintiff has unresolved claims based on non-Intel products that the parties refer to as VIA products.  However, it appears that Plaintiff has waived any claims related to non-Intel-based products.  As described above, the Court's substantive pre-

---

[4]Plaintiff asserts that it would be unjust to find these claims waived because it alleges that Defendants withheld information demonstrating that Intel products were sold abroad until after the Court decided the exhaustion issue.  However, Plaintiff clearly had much of this information at the time it stipulated to entry of final judgment in January, 2005.

9

judgment orders in this case explicitly stated that they related only to Intel-based products. After the Court resolved all of Plaintiff's infringement claims with respect to Intel-based products and inquired as to any matters remaining to be decided, the parties stipulated to entry of final judgment. Indeed, the proposed order to enter final judgment submitted by the parties and entered by the Court states, "No causes of action remain to be decided." Docket No. 850 at ¶ 6.

Moreover, Plaintiff's claims that Defendants' non-Intel-based products infringe its patents are not alternative or back-up claims rendered moot or unnecessary by the Court's earlier orders. They are separate and distinct claims that could have been tried and decided in a manner not inconsistent with those orders.

Therefore, the Court finds that the Plaintiff has waived any claims related to non-Intel-based products.

## CONCLUSION

For the foregoing reasons, the Court finds that reinstatement of judgment for Defendants is proper with respect to its Intel-based products. In addition, the Court finds that Plaintiff has waived any claims related to non-Intel-based products. Therefore, the Court DENIES Defendants' motion for summary judgment as moot (Docket No. 1125).

Judgment for Defendants shall be reinstated accordingly.